UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| **NICHOLAS SANDMANN,** by and through his parents and natural guardians, **TED and JULIE SANDMANN,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE NEW YORK TIMES COMPANY d/b/a THE NEW YORK TIMES**<br><br>Defendant. | Civil Action No. 2:20-cv-00023-WOB-CJS<br><br>Judge William O. Bertelsman<br>Magistrate Judge Candace Smith<br><br>**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

## I.   INTRODUCTION

The article ("Article") published by Defendant New York Times Company d/b/a The New York Times ("NY Times") presented the conflicting views of participants and online observers in the immediate aftermath of the events on the National Mall, events that had sparked a national debate. The Article did not attempt to determine which views were credible. But it did convey to readers the scope and nature of the controversy, the reasons why video of the incident had gone "viral," and how different constituencies were reacting. As the Sixth Circuit held just last year, when a newspaper reports on a controversy *as a controversy*, reasonable readers understand that no side's version is being presented as the factual account to be taken as the truth. *Croce v. The New York Times Company*, 930 F.3d 787, 793 (6th Cir. 2019). As such, the Article is not capable of defamatory meaning as a matter of law.

Plaintiff Nicholas Sandmann ("Sandmann") attempts to distinguish *Croce* on the grounds that it "is an Ohio case, applying Ohio law." (Doc. 25, Pl.'s Mem. in Opposition to Def.'s

1

Motion to Dismiss ("Response"), at *3.) But the *Croce* decision applied principles of law shared by Kentucky law: that a court must construe an allegedly defamatory publication as a whole and in context when evaluating whether it is capable of a defamatory meaning. *See McCall v. Courier Journal and Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981) ("It is an elementary principle of the law of libel that the defamatory matter complained of should be construed as a whole."). And contrary to Plaintiff's contentions, *Croce* did not turn on—and the NY Times does not ask this Court to adopt—the neutral reportage doctrine or the innocent construction doctrine.

Plaintiff's claim is based on a single statement by a person at the center of the controversy, Nathan Phillips, regarding his experience of events. Phillips's perspective is juxtaposed against the competing perspectives of others—some of them participants to the events, others only having viewed the viral video—along with the viral video itself. Because of the way the NY Times framed Phillips's quote, a reasonable reader of the Article would have understood him to be offering just one opinion about what happened, and readers were free to form their own opinion about Phillips by comparing his view with the other narratives and the video. Thus, the "blocked/retreat" statement, when considered in the context of the Article as a whole, is non-actionable opinion under Kentucky law. *See Lassiter v. Lassiter*, 456 F. Supp. 2d 876 (E.D. Ky. 2006).

Last, Sandmann has not shown why his claim is not barred by the one-year statute of limitations applicable to defamation claims under the Kentucky Court of Appeals' decision in *Tallman v. City of Elizabethtown*, No. 2006-CA-02542, 2007 WL 3227599 (Ky. Ct. App. Nov. 2, 2007) (unpublished). When Sandmann sued the Washington Post in February 2019, he conclusively demonstrated that he was no longer under a disability justifying the tolling of the statute of limitations.

## II.     ARGUMENT

### A.     The Article is not capable of a defamatory meaning when considered as a whole.

Much of Sandmann's Response consists of rebutting the straw man argument that the NY Times is asking this Court to adopt the neutral reportage and innocent construction doctrines by its reliance on the Sixth Circuit's recent decision in *Croce*. (Pl.'s Response, at *3.) The NY Times makes no such argument.

Rather, as in this case, the central issue in *Croce* was whether the article at issue was capable of a defamatory meaning. And like Kentucky law, Ohio law instructs that "when a court is deciding 'whether a statement is defamatory as a matter of law, a court must review the totality of the circumstances and ... read[ ] the statement in the context of the entire publication to determine whether a reasonable reader would interpret it as defamatory.'" *Croce*, 930 F.3d at 792-93 (quoting *Am. Chem. Soc'y v. Leadscope, Inc.*, 978 N.E.2d 832, 853 (Ohio 2012)). This is the same standard under Kentucky law. *See McCall*, 623 S.W.2d at 884.

As with the article addressed by the *Croce* court, the Article does not present as conclusive fact that Sandmann blocked Phillips or failed to allow him to retreat, nor does it suggest that Phillips's characterization of his encounter with Sandmann was accurate. 930 F.3d at 794. Further, Phillips's statement, republished from the Washington Post, was appropriately placed in the Article to make clear that this was Phillips's perception of what happened, and not an authoritative account of the incident.

This case might be different if the NY Times had reported that Sandmann blocked Phillips and would not let him retreat, without making clear those these were allegations by Phillips, i.e., his version of events. It might also be a different case if the NY Times failed to report that others saw the incident differently. In those alternative factual scenarios, it might then

3

be a case, as described in *Croce*, in which an article at issue "did not use language that qualified the statements made by others as allegations." *Id.*

But the Article did not do that. One of Phillips's fellow activists is quoted as saying that Sandmann and his classmates embraced the Native Americans' cause. Additionally, the NY Times included the video, permitting readers to draw their own conclusions. No reasonable reader of the Article could come away with the impression that the "blocked/retreat" statement was anything more than Phillips's view of what occurred. And contrary to Sandmann's contention, the *Croce* court's reasoning and holding on defamatory meaning was not an application of the neutral reportage doctrine, as the court expressly recognized that Ohio—like Kentucky—does not recognize that doctrine. *See Croce*, 930 F.3d at 796 (citing *Young v. Morning Journal*, 669 N.E.2d 1136, 1138 (Ohio 1996)).

The gist of Sandmann's response to this argument is that "[i]n Kentucky, unlike Ohio, republishing a defamatory statement is defamation, even if the article as a whole is 'neutral' in some sense" and that "[q]uoting the statements of other participants or bystanders, or 'following up' with more balanced reportage does nothing to alter the unequivocal application of Kentucky law." (Pl.'s Response, at *7.) But that is not the law. Were it, under Sandmann's logic, a person who wrote a letter to the NY Times's editor professing support for Sandmann and disbelief of Phillips would be a potential defendant if he used Phillips's quote to set up his argument.

Instead, the law recognizes the importance of context. "Words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable." Restatement (Second) of Torts § 563 cmt. d. Here, no reasonable reader of the Article would have construed its republication of Phillips's statement as

4

defamatory within the context of the Article as a whole. As such, the Article is not defamatory, even if Phillips's statement—appearing in a different context—could be construed as such.

The Court cannot evaluate the defamatory character of the statement with reference to its appearance in other publications, or in a vacuum. *See Lassiter*, 456 F. Supp. 2d at 882 (holding that statement at issue must be assessed from the perspective of "a reasonable person reading the statement in the context of the whole article . . ."). *See also Nat. College of Ky., Inc. v. WAVE Holdings, LLC* ("*National College*"), 536 S.W.3d 218, 223 (Ky. Ct. App. 2017) (holding that article "must be read as a whole" to determine whether statement was true or substantially true).

In an effort to construct a defamatory meaning, Sandmann ignores this basic principle. Sandmann argues, for example, that the "obvious substance" of Phillips' statement was that "[Sandmann] blocked him and precluded his freedom of movement during what Phillips alleged to be a prayerful, ceremonial procession on the steps of the Lincoln Memorial." (Pl.'s Response, at *8.) But neither Phillips's statement nor the Article as a whole suggests Phillips was engaged in a "prayerful, ceremonial procession." Phillips simply stated that he wanted to "finish my song at the Lincoln Memorial." The fact that Sandmann repeatedly reaches beyond the Article, to import words and allegations, demonstrates that the Article, alone, would not lead a reasonable reader to conclude that Sandmann did something highly offensive, much less that he engaged in "an act of aggression and an act of belligerence," as Sandmann contends. (Pl.'s Response, at *8.)

Sandmann's rebuttal also includes the irrelevant contention that the NY Times should have conducted a more thorough investigation into the Phillips blocked/retreat statement before publishing it, and that it may not rely on neutral reportage or the innocent construction doctrine. (Pl.'s Response, at *5.) But the sufficiency of the NY Times's investigation has nothing to do

5

with whether the Article is defamatory. The determination of whether a defamatory meaning is possible is determined from the face of the article.[1]

The Article makes clear that the NY Times was not "vouching" for Phillips, but merely republishing his statement to another news source. The Article even noted that the NY Times had been unable to reach Phillips, further emphasizing the second-hand nature of the comments. A reasonable reader would understand that the NY Times was reporting on Phillips' prior public statements and that it was not suggesting that statement was something the NY Times had verified or that the statement was anything more than an allegation.

      **B.**       **The "blocked/retreat" statement is not defamatory *per se*.**

Sandmann argues that this Court has previously held, in other cases, that Phillips's statement is defamatory *per se*, and should thus make the same finding here, based on the Court's interlocutory order in *Sandmann v. NBCUniversal Media, LLC*, Case No. 2:19-cv-00031-WOB-CJS (E.D. Ky. Mar. 12, 2019) (Doc. 43, "Memorandum Opinion and Order") ("NBCUniversal Order"). But Sandmann reads too much into that prior decision. In that decision, the Court noted that "[t]he FAC specifically alleges that, because of these publications, plaintiff became 'the subject of overwhelming public hatred, contempt, disgrace and scorn from the public.'" Based on this allegation, the Court went on to say: "[t]herefore, as in the two related cases, the Court finds that the statements that plaintiff 'blocked' Phillips or did not allow him to retreat, if false, meet the test of being libelous per se under the definition quoted above." *Id.*

---

[1] But as Sandmann spends an inordinate amount of time on this issue, the NY Times notes that it republished a statement made to a reliable news organization. Consequently, the NY Times will be able to show that it was not negligent in republishing Phillips's statement to the Washington Post. *See O'Brien v. Williamson Daily News,* 735 F. Supp. 218, 220 (E.D. Ky. 1990), *aff'd*, 931 F. 2d 893 (6th Cir. 1991) ("The Court agrees that the wire service defense applies in this instance. More importantly, the so-called 'defense' is actually a definition of ordinary care in regard to the use of wire service stories."). Thus, contrary to Sandmann's assertion, Kentucky does recognize that what the NY Times did here was not negligent, and that the duty to investigate is not absolute as Sandmann contends.

Sandmann argues that the Court's prior ruling means that his mere allegations that he was the subject of hate, contempt, etc. are all that is needed to establish libel per se, at least to overcome a motion to dismiss. But that is not the correct standard. The proper analysis is whether the statement, in the context of the entire article (and regardless of the plaintiff's characterization of it), is of such a nature that , **as a matter of law,** a jury could conclude that it tends to degrade or disgrace the plaintiff, or hold him up to public hatred, contempt or scorn." *See Roche v. Home Depot U.S.A.*, 197 F. App'x. 395, 398 (6th Cir. 2006); *Dermody v. Presbyterian Church, U.S.A.*, 530 S.W.3d 467, 475 (Ky. Ct. App. 2017). And when applying that standard to the NY Times article, the complaint falls short. Moreover, the Court's ruling in the NBC case addressed a completely separate publication in which the Phillips quote was presented in an entirely different context. The ruling does not automatically apply here, to a different publication in a different context.

Sandmann argues that the 'blocking/retreat statement imputed criminal conduct to Sandmann,' and was thus libelous *per se*. Sandmann even goes so far as to argue that "[t]o accuse someone of 'blocking' another and not 'allow[ing]' a person to 'retreat' is to accuse him of assaultive behavior that could, with an exercise of prosecutorial discretion, be charged criminally, even as a hate crime in this instance." (Pl.'s Response, at **8-9.)[2]

Sandmann's assertion is absurd. No reasonable reader would understand Phillip's statement to accuse Sandmann of *criminal* conduct, not in isolation and certainly not in the context of the Article. The Article describes Sandmann's encounter with Phillips in these words: "[Sandmann] stood directly in front of the elder [Phillips], who stared impassively ahead while

---

[2] The notion that the term "blocked" is in all cases defamatory *per se* is belied by the case of *Taxpayers' League of Bell County v. Sun Pub. Co.*, 256 Ky. 37, 42 (Ky. 1934), in which the Court ruled that reporting the plaintiff organization "blocked" a county's plan to use tax receipts collected in the current year to pay debts incurred in a prior year "is [not] at all reprehensible."

7

playing a ceremonial drum." There is nothing in the Article, nor Phillips's statement, that implies that Sandmann had criminal intent, or that he did not have the right to stand still, or that the term "allow" meant that Sandmann physically restrained Phillips. All that readers learned was Phillips's mindset: he wanted to walk in a specific direction and he felt impeded when a young man did not move out of his way. The accompanying video shows that Phillips was beating his drum during the encounter, with other indigenous protestors next to him, and with a sparse crowd behind him on an open public plaza, precluding any inference that Phillips's freedom of movement was literally impaired.

Moreover, the Article contains information that reveals that from the perspective of other members of the Indigenous People's March ("IPM"), Sandmann was not acting aggressively. Specifically, the Article provides a statement from the IPM that "the same youth and a few others became emotional because of the power, resilience and love we inherently carry in our DNA." (Compl., at Page ID#: 87.) No reasonable reader could conclude, when evaluating the Article as a whole, that Sandmann was engaging in criminality based on Phillips's cursory and vague description of the encounter.

### C. Phillips's blocked/retreat statement constitutes non-actionable opinion.

The court must evaluate the question whether a statement constitutes opinion in the context of the publication as a whole. *Lassiter*, 456 F. Supp. 2d at 882. A statement that is merely disparaging, but lacks the definiteness or precision to be branded false, is not actionable under Kentucky law. *See Welch v. Am. Publ'g Co. of Ky.*, 3 S.W.3d 724, 730 (Ky. 1999) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990)).

Here, Phillips's statement that he was "blocked" and that Sandmann would not allow him to "retreat" reflects Phillips's subjective perception of his encounter with Sandmann. The terms

8

"blocked" and "retreat"—even if they could be characterized as disparaging—are not sufficiently definite and precise as to be susceptible to proof of truth or falsity.

Sandmann argues that "[t]o state that one person 'blocked' another is a statement of fact" because it is a "statement about the physical world, taken directly from our sensory perception of it." (Pl.'s Response, at *14.) This argument misses the point. It is a fact, capable of proof, that Sandmann stood still and Phillips approached him. But how those facts affected Phillips, the conclusions he drew from them, and how it made him feel are classic examples of opinion. Phillips apparently decided to walk in a specific direction through the crowd, toward the Lincoln Memorial, a decision he felt was a "retreat." In the process, he encountered a young man who did not immediately step out of his way. He interpreted that as "block[ing]" what he believed to be his "way." These are subjective perceptions of the same basic facts, incapable of proof or disproof.

What proof could Sandmann offer to rebut Phillips's assertion that Sandmann blocked his way? In his complaint, Sandmann contends that Phillips could have gone around him (Compl., at Page ID#: 11), but this does not make Phillips's statement false. From Phillips's perspective, whether his perception was right or wrong, he felt he could not continue on his selected path. The term "blocked" captured Phillips's interpretation of the event, and like any subjective interpretation it is not capable of being proved or disproved. In this respect, Phillips's statements are similar to the statements the court considered in *Sams v. Wal-Mart Stores East, LP*, No. 2010-CA-000007-MR, 2010 WL 4740330 (Ky. Ct. App. Nov. 24, 2010) (unpublished). In that case, the defendants allegedly stated that the plaintiffs "have taken too many breaks and spending extra time on breaks resulting in theft of co[mpany] time." The Court found these

9

statements were "absolutely privileged as statements of opinion." The statements in *Sams* are judgment determinations based on observed facts, just as Phillips's statement was.

Sandmann misconstrues the law when he argues, "The 'block' happened or it didn't. It is true or it is false." (Pl.'s Response, at *15). Words that are factual in one context can be found to be opinion in another. State and federal courts in Kentucky have made this point clear. In *Loftus v. Nazari,* 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014), the court deemed a defendant's comment that a plastic surgeon committed malpractice opinion. In *Lassiter v. Lassiter,* 456 F. Supp. 2d 876, 881(E.D. Ky. 2006), the court found that a woman's accusation that her husband committed adultery was opinion. And in *Cromity v. Meiners,* 494 S.W. 3d 499, 504 (Ct. App. Ky. 2015), the court found a radio host's contention that he was not speeding, despite having been pulled over and ticketed by plaintiff, was opinion.

### D. Sandmann's claim is barred by the one-year statute of limitations under the Kentucky Court of Appeals' decision in *Tallman v. City of Elizabethtown*.

Sandmann's February 2019 suit against the Washington Post establishes that as of that date, Sandmann was no longer under a disability within the meaning of KRS 413.170(1) for purposes of vindicating injuries suffered by virtue of the widespread news coverage of the viral video. *Tallman*, 2007 WL 3227599.

Sandmann argues that the Court should disregard *Tallman* as "incorrectly decided." (Pl.'s Response, at *23.) But the *Tallman* decision—which the Kentucky Supreme Court declined to review—is the best indication of how a Kentucky state court would interpret the statute. *See United States v. Burris*, 912 F.3d 386, 398 (6th Cir. 2019). Thus, this Court should follow that guidance in the absence of contrary guidance from the Kentucky Supreme Court.

Further, the fact that Nicholas did not sue the NY Times, but another news organization, does not change the fact that he is relying upon the same allegedly defamatory statement made by Phillips to the Washington Post. His suit against the Washington Post demonstrates that he was capable of pursuing a remedy based on that statement. As such, the equitable considerations underlying the *Tallman* court's decision apply with equal force to the unique facts presented in this case. Accordingly, the court should apply *Tallman* and find that Sandmann's claim against the NY Times is barred by the one-year statute of limitations applicable to his claims.

### III. CONCLUSION

For the reasons set forth, the NY Times respectfully requests that the Court GRANT its Motion, and dismiss Sandmann's Complaint with prejudice.

Respectfully submitted,

/s/ John C. Greiner
John C. Greiner (*Pro Hac Vice*)
GRAYDON HEAD & RITCHEY LLP
312 Walnut St.
Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.com

&

J. Stephen Smith (KBA #86612)
Darren W. Ford (KBA #95373)
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive
Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.com
dford@graydon.com

ATTORNEYS FOR DEFENDANT
