**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**


**CIVIL ACTION NO. 2:20CV23 (WOB)**


**NICHOLAS SANDMANN**                                    **PLAINTIFF**

**VS.**


**THE NEW YORK TIMES CO.**                              **DEFENDANT**

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**


**CIVIL ACTION NO. 2:20CV24 (WOB)**


**NICHOLAS SANDMANN**                                    **PLAINTIFF**

**VS.**


**CBS NEWS, INC., ET**
**AL.**                                                 **DEFENDANTS**
▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**


**CIVIL ACTION NO. 2:20CV25 (WOB)**


**NICHOLAS SANDMANN**                                    **PLAINTIFF**

**VS.**


**ABC NEWS, INC.,**

1

**ET AL.**                                           **DEFENDANTS**
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**

**CIVIL ACTION NO. 2:20CV26 (WOB)**

**NICHOLAS SANDMANN**                                **PLAINTIFF**

**VS.**

**GANNETT CO., INC.**                                **DEFENDANT**
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**

**CIVIL ACTION NO. 2:20CV27 (WOB)**

**NICHOLAS SANDMANN**                                **PLAINTIFF**

**VS.**

**ROLLING STONE, LLC, ET AL.**                       **DEFENDANTS**
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**OPINION AND ORDER**

These five libel cases arise out of events that occurred in
Washington, D.C. on January 18, 2019 and the ensuing extensive
media coverage of plaintiff Nicholas Sandmann's encounter with
Nathan Phillips.

The cases are now before the Court on motions filed in all

five pending cases: plaintiff's motions for partial summary judgment on the issue of falsity[1]; defendants' joint motion for summary judgment[2]; defendants' supplemental memoranda in support of summary judgment[3]; and defendants' motions to strike[4].

### *Factual and Procedural Background*

The Court has previously set forth the general factual background of these cases, and this Opinion assumes the reader's familiarity therewith. *See* Case No. 20cv23, Doc. 27; Case No. 20cv24, Doc. 33; Case No. 20cv25, Doc. 36; Case No. 20cv26, Doc. 39; Case No. 20cv27, Doc. 35. For purposes of the present motions, however, some review of the procedural history of these and related cases is warranted.

The first case filed by Nicholas Sandmann against media defendants based on their coverage of the encounter between

---

[1]*Sandmann v. New York Times*, No. 20cv23 (Doc. 52); *Sandmann v. CBS News*, No. 20cv24 (Doc. 58); *Sandmann v. ABC News, Inc.*, No. 20cv25 (Doc. 64); *Sandmann v. Gannett Co., Inc.*, No. 20cv26 (Doc. 65); *Sandmann v. Rolling Stone, LLC* (Doc. 59).

[2]*Sandmann v. New York Times*, No. 20cv23 (Doc. 53); *Sandmann v. CBS News*, No. 20cv24 (Doc. 59); *Sandmann v. ABC News, Inc.*, No. 20cv25 (Doc. 65); *Sandmann v. Gannett Co., Inc.*, No. 20cv26 (Doc. 66); *Sandmann v. Rolling Stone, LLC* (Doc. 60).

[3]*Sandmann v. New York Times*, No. 20cv23 (Doc. 54); *Sandmann v. CBS News*, No. 20cv24 (Doc. 60); *Sandmann v. ABC News, Inc.*, No. 20cv25 (Doc. 66); *Sandmann v. Gannett Co., Inc.*, No. 20cv26 (Doc. 67); *Sandmann v. Rolling Stone, LLC* (Doc. 61).

[4]*Sandmann v. New York Times*, No. 20cv23 (Doc. 64); *Sandmann v. CBS News*, No. 20cv24 (Doc. 72); *Sandmann v. ABC News, Inc.*, No. 20cv25 (Doc. 78); *Sandmann v. Gannett Co., Inc.*, No. 20cv26 (Doc. 78); *Sandmann v. Rolling Stone, LLC* (Doc. 72).

Sandmann and Phillips was *Sandmann v. The Washington Post*, Case No. 19cv19, which was filed in this Court on February 19, 2019. Sandmann alleged that The Post defamed him by publishing seven articles and three Tweets containing a total of thirty-three allegedly libelous statements.

Sandmann filed similar complaints against Cable News Network, Inc. ("CNN") and NBCUniversal Media, LLC ("NBC") on March 31, 2019 and May 1, 2019, respectively. (Case Nos. 19cv31 and 19cv56).

The Post filed an early motion to dismiss which the Court granted, after oral argument, in an opinion issued on July 26, 2019. (Case No. 19cv19, Doc. 47). In that opinion, the Court held that none of the statements were actionable for various reasons: some were not "about" Sandmann; some were statements of opinion; and/or some were not subject to a defamatory meaning. (*Id.*).

Sandmann filed a motion for reconsideration and a motion for leave to file an amended complaint. After oral argument, the Court entered an order on October 28, 2019, partially granting the motion to reconsider and allowing Sandmann to amend his complaint. (Case No. 19cv19, Doc. 64). The Court's ruling was narrow, however. It allowed only one group of statements to proceed as a basis for the defamation claim: Phillips's statements that Sandmann had "blocked" Phillips and "would not allow him to retreat." *Id.* at 2.

The Court stated that justice required that discovery be conducted as to the context of those statements, noting that the

4

"Court will then consider them anew on summary judgment." (*Id.*). The Court reiterated this point at the end of its order, stating that while the allegations of the amended complaint passed the requirement of "plausibility," they would be subject to summary judgment practice after discovery. (*Id.* at 3).[5]

The Court called the three pending cases for a scheduling conference in January 2020. During that conference, counsel informed the Court that Sandmann and CNN had settled, and that Sandmann intended to file additional suits against other media defendants. *See* Case No. 19cv19, Doc. 72. With the parties' agreement, the Court thus deferred completion of a discovery plan until the new suits were filed and any preliminary motions resolved. *Id.*

The five cases now pending before the Court were all filed on March 2, 2020. However, the onset of the COVID-19 pandemic, changes in Sandmann's representation, and resolution of Rule 12 motions in the newly filed cases slowed the progress of these matters until early 2021.[6]

In March 2021, the Court adopted the parties' proposed "phased" discovery plan in all cases, with "Phase 1" being "limited

---

[5] The Court made similar rulings in the CNN and NBC Cases. *See* Case No. 19cv31, Doc. 43, Case No. 19cv56, Doc. 43.

[6] The Court denied motions to dismiss in the five new cases consistent with its rulings in the first three cases. *See* Case No. 20cv23, Doc. 27; Case No. 20cv24, Doc. 33; Case No. 20cv25, Doc. 36; Case No. 20cv26, Doc. 39; Case No. 20cv27, Doc. 35).

to the facts pertaining to the encounter between Plaintiff and Mr. Phillips." (Case No. 20cv23, Doc. 36 at 2).[7] The parties' joint planning report explained:

> **Plaintiff's case against each Defendant then would be ripe for an early motion for summary judgment [on] whether Nathan Phillips' statements that Plaintiff "blocked" him or "prevented him from retreating" (the "Blocking Statements") are true or substantially true or otherwise not actionable based on the undisputed facts developed during initial discovery and the issues defined in the Court's prior decisions.**
>
> The limited scope of Phase 1 discovery would allow the parties to present summary judgment arguments to the Court without engaging in the costly expensive discovery that many of the legal issues in this case would require.
>
> . . .
>
> The parties agree that phased discovery is the best way to focus the resources of the parties and limit the burdens on the Court. **Most importantly, it will permit this Court to rule at an earlier stage on the threshold issues discussed above.**

(*Id.* at 2-3) (emphasis added).

Although Phase 1 discovery has been completed, the only evidence filed in the record consists of: (1) Sandmann's deposition; (2) a declaration under oath by Phillips; (3) seven declarations under oath by persons in attendance at the incident; and (4) a collection of video recordings taken at the National Mall that day. This evidence will be briefly summarized.

---

[7] By then, both The Post and CNN had settled with Sandmann. Sandmann and NBC settled at the end of 2021.

### A. **Sandmann's Deposition**

Although lengthy, Sandmann's deposition contains relatively little testimony pertinent to the issues at hand:

- Sandmann observed as Phillips moved toward and then through the group of students. Some students moved out of Phillips's way as he walked forward. Sandmann felt that Phillips was trying to intimidate the students by walking right up to them when he could have taken several other routes around them, so Sandmann felt like he wanted to stand up for his school. At the time, he did not know that Phillips's intent was to get up to the Lincoln Memorial;

- Phillips stood so close to Sandmann that his drum touched Sandmann's shoulder, his spit was getting on Sandmann's face, and Sandmann could smell Phillips's breath;

- The steps were icy and Sandmann was concerned that if he moved he might slip and fall.

- Sandmann felt he was being mature by remaining calm and standing his ground in a tense situation;

- Sandmann can see how Phillips might have perceived that Sandmann was trying to block his path;

- There was room for Phillips to keep walking if that is what he wanted to do. Sandmann did not feel that he was blocking Phillips because Phillips gave no indication that he wanted to move forward. Instead, he locked eyes with Sandmann when he was still several feet away from him and then "planted" himself directly in front of Sandmann. Phillips did not take even the slightest step in any direction in an attempt to move;

- Sandmann is not sure if he moved a little to the left as Phillips approached; he either adjusted his footing and/or the people around him shifted as well;

- At one point, Sandmann felt that he was blocked from moving because of the crowd around him, although he has no reason to believe that they would not have moved if he had asked them to do so.

7

(Sandmann Dep. 158-59, 180-84, 193, 199, 206, 218, 221, 223-25, 246-48, 263-67, 276-80, 283-84, 340).

**B. Phillips's Declaration**

Phillips's declaration, submitted by defendants in support of their joint motion for summary judgment, avers:

- Other than a woman named Ashley Bell, Phillips did not know any of the individuals who joined him in walking towards the group of students;

- As he approached the students, Phillips "felt that the crowd was swarming and surrounding me;"

- As Phillips began to move towards the Lincoln Memorial, students moved out of his way. However, Sandmann "appeared" to position himself in front of Phillips;

- Phillips declares: "It was very much my experience that Mr. Sandmann was blocking me from exiting the situation. It was very much my experience that he intentionally stood in my way in order to stop me from moving forward;"

- Further: "I felt surrounded in that space, and I believed Mr. Sandmann did not want to let me pass. It seemed to me that Mr. Sandmann felt that he needed to stand there and block my way."[8]

**C. Other Declarations**

Six of the seven other declarations are by individuals who had attended the Indigenous Peoples March that day, which Phillips also attended. (Case No. 20cv23, Docs. 53-3 — 53-7). Only one, Ashley Bell, knew Phillips from prior events. There was no planning among these people in advance of the incident in question. Rather,

---

[8] The Court notes that Phillips's declaration was signed on December 11, 2021. Sandmann's deposition was taken on September 13 and 14, 2021.

their decision to join Phillips as he approached the group of students was an impromptu one. Five of the six individuals aver that it was their impression that Sandmann blocked Phillips from moving forward.

The seventh declaration is from a classmate of Sandmann's who was also with the group of students on the Mall. (Case No. 20cv23, Doc. 53-8). But that student had moved away from the group at the time of the encounter between Sandmann and Phillips and did not observe it directly.

### D. **The Videos**

The parties have submitted twenty videos that capture scenes from the National Mall on the day in question. The parties have stipulated to the videos' authenticity and have waived any hearsay objections to them. (Case No. 20cv23, Doc. 53-1 at 14 n.3).

In the Court's view, six of the videos show the specific encounter between Sandmann and Phillips in helpful respects.[9] What a viewer might conclude from these videos is a matter of perspective. However, what is clearly shown and not subject to reasonable dispute is at least the following:

- Phillips began drumming and approaching the group of students, accompanied by several individuals who testify that, although they did not know Phillips, they followed him because he was an elder;

- As Phillips came close to the group of students, some began to part, and Phillips continued to move forward.

---

[9] Videos 1, 2, 8, 9, 16, 17.

Eventually, Phillips came to a stop directly in front of Sandmann. As Phillips approached, Sandmann subtly adjusted his footing, but it is unclear if he actually moved from where he stood.

- At no point did Phillips ask Sandmann to move or attempt to continue walking past him.

- Sandmann also did not change his position while Phillips played his drum, although it was within inches of Sandmann's face.

- The encounter ended when a chaperone arrived and told the students that their buses had arrived.

### *Analysis*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering the evidence in the record, the court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007). This Court is sitting in diversity, and thus applies Kentucky law. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003).

### A. **Law of the Case**

Sandmann first argues that the Court cannot now consider the fact-or-opinion issue because of the law of the case doctrine.

10

This argument is without merit.

As noted above, the Court expressly held that while the allegations of Sandmann's complaints passed the "plausibility" test at the pleading stage, and that discovery should be had on the context of Phillips's statements, the actionability of the statements would be revisited on summary judgment.

Further, the Sixth Circuit has held that "the law of the case doctrine does not apply to earlier proceedings where a different legal standard governs," such as a ruling at the pleading stage and subsequent summary judgment proceedings. *In re: B & P Baird Holdings, Inc.*, 759 F. App'x 468, 477 (6th Cir. 2019) (citation omitted).

Finally, Sandmann's insistence that the Court cannot now revisit this legal issue is ironic considering that he vigorously, and successfully, moved the Court to reconsider its initial ruling in The Post case.

In sum, the law of the case doctrine does not preclude this Court from reconsidering anew on summary judgment legal issues raised at the pleading stage.

B. **Fact or Opinion**

1. **General Principles**

All parties agree that whether "a statement is fact or opinion is a question of law for the court to decide." *Croce v. Sanders*, 843 F. App'x 710, 713 (6th Cir. 2021) (citation omitted).

11

As the Supreme Court of the United States noted over thirty years ago in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.* at 20; *see also id.* at 21 (statement must be "sufficiently factual to be susceptible of being proved true or false"); *Compuware Corp. v. Moody's Inv'rs Servs.*, 499 F.3d 520, 529 (6th Cir. 2007) ("Put differently, a viable defamation claim exists only where a reasonable factfinder could conclude that the challenged statement connotes actual, objectively verifiable facts.").

Under Kentucky law, "alleged defamatory statements should be construed as a whole" in "the whole context of its publication." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1990) (internal quotations and citation omitted). And a "publication must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it." *Id.* at 858.

The Sixth Circuit has also emphasized that it is important for the court to consider what a reasonable reader would take away from allegedly defamatory statements.  A recent Sixth Circuit case, *Croce v. Sanders*, 843 F. App'x 710 (6th Cir. 2021), illustrates this principle well.  The case involved a biologist who contacted the New York Times and other newspapers about statistical inaccuracies in scientific articles authored by a celebrated

cancer researcher.  *Id.* at 712–13.  The cancer researcher sued the biologist for defamation.   The Sixth Circuit held that his statement that the researcher "knowingly engag[ed] in scientific misconduct and fraud" was protected opinion.  *Id.* at 715.

Judge Thapar, who authored the opinion, focused on what a reasonable reader would take away from the letter that the biologist wrote.  He concluded that "reasonable readers would see there is ample room for a different interpretation of the evidence [the biologist] presented."  *Id.* at 716.  He further explained that "whether a set of facts amounts to misconduct" is subjective and "we would expect people to have different opinions on the question."  *Id.*   The biologist's statement was "neither an assertion of fact nor a conclusion that follows incontrovertibly from asserted facts as a matter of logic.  It is instead a subjective take that is up for debate."  *Id.; see also Seaton v. TripAdvisor*, 728 F.3d 592, 598 (6th Cir. 2013) ("Readers would, instead, understand the list [of dirtiest hotels in America] to be communicating subjective opinions of travelers who use Trip Advisor."); *Macineirghe v. Cty. Of Suffolk*, 13-cv-1512, 2015 WL 4459456, at *14 (E.D.N.Y. July 21, 2015) (finding that a statement from an eyewitness who recounted the entirety of a police chase and said that he saw someone "block" a police car was opinion, and a reasonable reader would not understand his words to imply undisclosed facts).

13

The Supreme Court has also emphasized that the *setting* in which the speech in question is made helps make the nature of the allegedly defamatory statements more apparent to readers.  For example, "[q]uotations allow the reader to form his or her own conclusions and to assess the conclusions of the author, instead of relying entirely upon the author's characterization of her subject." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 511 (1991); *see also Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 13-14 (1970) (holding that when speakers at a city council meeting characterized the plaintiff's negotiating position as "blackmail," a reasonable reader would understand that it was not slander when spoken, and not libel when reported by a newspaper).

These same principles are applied across many other circuits. In sum, the Court must ask whether a reasonable reader, in reading the entire article, would understand that the statement in question is someone's opinion or interpretation of an event or situation. *See, e.g.*, *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("When an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment."); *Hayes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("If it is plain that the speaker is expressing a subjective view, an interpretation, a theory,

14

conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable); *Phantom Touring, Inc. v. Affiliated Publ'ns,* 953 F.2d 724, 729 (1st Cir. 1992) ("The sum effect of the format, tone, and entire content of the articles is to make it unmistakably clear that [the author] was expressing a point of view only.").

Finally, if an allegedly defamatory statement is a statement of opinion, it is actionable under Kentucky law "only if it implies the allegation of undisclosed defamatory facts." *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 881 (E.D. Ky. 2006) (internal quotations and citation omitted).

## 2. **The "Blocking Statements"**

The allegedly defamatory Blocking Statements at issue are the following:

> It was getting ugly, and I was thinking: "I've got to find myself an exit out of this situation and finish my song at the Lincoln Memorial," Mr. Phillips told the Post. I started going that way, and that guy in the hat stood in my way and we were at an impasse. **He just blocked my way and wouldn't allow me to retreat.**

(*See, e.g.*, Case No. 20cv23, Doc. 1-7 at 3) (emphasis added).[10]

Applying the above legal authorities, and with the benefit of

---

[10] This citation is to the complaint against The New York Times, which quoted The Washington Post article. Some of the publications by the other four defendants differ slightly. For example, CBS's publication quoted Phillips as saying that Sandmann "positioned himself" in front of Phillips; that Sandmann "slided" to the left and right; and that Sandmann "aligned himself with me, so that sort of stopped my exit." (Case No. 20cv24, Doc. 1-7 at 3). However, the parties apply the same analysis to these statements.

a more developed record, the Court concludes that Phillips's statements that Sandmann "blocked" him and "wouldn't allow [him] to retreat" are objectively unverifiable and thus unactionable opinions.

Instead, a reasonable reader would understand that Phillips was simply conveying his view of the situation. And because the reader knew from the articles that this encounter occurred at the foot of the Lincoln Memorial, he or she would know that the confrontation occurred in an expansive area such that it would be difficult to know what might constitute "blocking" another person in that setting.

Generally, "blocking" is an imprecise term capable of different meanings that "lacks a plausible method of verification." *Croce*, 843 F. App'x at 715 (citation omitted). In particular, because of the context in which this encounter occurred—the large, open area adjacent to the Lincoln Memorial—the blocking statement simply cannot be proven to be either true or false. Had such an encounter occurred in a small or confined area, a statement that one person was "blocked" by another might be objectively verifiable. But it is not here.

Interestingly, plaintiff's responsive memorandum to the joint motion for summary judgment argues that "blocking" is factual because "it involves the oppositional position of two human bodies *in a confined space*." (Case No. 20cv23, Doc. 61 at 42) (emphasis

16

added). But, as the videos depict, the area where this encounter occurred was a huge, outdoor setting, not a confined space.

Further, Phillips's statements rely on assumptions concerning both Phillips and Sandmanns' state of mind. Yet, Phillips had no way of knowing what Sandmann was thinking or intended when he made the challenged statements.[11]

It has long been established that someone's state of mind is not capable of being proven true or false.[12] *Compare Riley v. Harr*, 292 F.3d 282, 290 (1st Cir. 2002) ("An author who fairly describes the general events involved and offers his personal perspective about some of the ambiguities and disputed facts should not be subject to a defamation action.") *and Haynes*, 8 F.3d at 1227 ("Anyone is entitled to speculate on a person's motives from the known facts of his behavior.") *with Milkovich*, 497 U.S. at 21 (explaining that perjury is verifiable by comparing the witness's

---

[11] It is undisputed that Phillips and Sandmann did not speak to each other during their standoff. Thus, Sandmann had no way of knowing that Phillips was trying to pass him to get to the Lincoln Memorial. Likewise, Phillips had no way to confirm his belief that Sandmann intended to block him and would not allow him to retreat.

[12] Sandmann's own deposition testimony illustrates the unverifiability of someone's state of mind. Sandmann was asked whether it was possible "that Phillips was trying to see if you guys [Sandmann and his friend, Cameron] would both move to create a path for him to go towards what would now be where you are standing?" (Sandmann Dep. at 238:1-6). This of course required Sandmann to speculate and prompted him to answer "It's possible he was thinking that. Again, he never made that clear." (*Id.* at 238:12-13). He was then asked if this was because "he [Phillips] didn't articulate it?" (*Id.* at 238:15-16). To which he responded "Correct." (*Id.* at 238:17). Phillips's intent in that moment is not objectively verifiable, the same way Sandmann's intent in that moment is not objectively verifiable. The Court must look at the meaning of the statements when they were made, without reference to *post hoc* explanations.

17

testimony at a board hearing and subsequently in court); *see also Compuware Corp.*, 499 F.3d at 529 ("A Moody's credit rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors.").

Courts have also found important the style of writing and its context in assessing what a reasonable reader would understand the allegedly defamatory statements to mean.

For example, in *McCabe v. Rattiner*, 814 F.2d 839 (1st Cir. 1987), the owner of a time share condominium development sued a reporter who published an article in a local paper describing his encounter with the business, referring to it as a "scam." After reviewing Supreme Court libel precedent, the Court first noted that the word "scam" does not have a precise meaning but means different things to different people. *Id.* at 842. The Court further observed that first-person, narrative style statements on matters of public concern "put[] the reader on notice that the author is giving his views" and "are commonly understood to be attempts to influence the public debate." *Id.* at 843.

This latter observation applies equally to Phillips's statements. The media defendants were covering a matter of great public interest, and they reported Phillips's first-person view of what he experienced. This would put the reader on notice that Phillips was simply giving his perspective on the incident. *See also Riley*, 292 F.3d at 289 (statement expressing an

interpretation, rather than claiming to be in possession of objectively verifiable facts, is nonactionable opinion).

Moreover, Phillips's statement did not imply the existence of any nondisclosed defamatory facts, and only under such circumstances does a statement of opinion lose its constitutional protection. *Yancey*, 786 S.W.2d at 857.

Therefore, in the factual context of this case, Phillips's "blocking" statements are protected opinions. This holding moots all other motions before the Court.

### *Conclusion*

The Court allowed these cases to proceed to discovery based on the allegations of plaintiff's complaints and a belief that some development of the context of this incident may be helpful. The parties shrewdly agreed to phased discovery allowing the above legal issues to be revisited by the Court before the parties embarked on further expensive and time-consuming discovery and possibly trials, all of which would be wasted should the United States Court of Appeals for the Sixth Circuit agree with this Opinion.

And finally, the Court has reached its conclusions with fealty to the law as its primary concern, with no consideration of the rancorous political debate associated with these cases.

Therefore, having reviewed these matters, and the Court being

advised,

**IT IS ORDERED** that:

(1)  Plaintiff's motions for partial summary judgment on the issue of falsity (*Sandmann v. New York Times*, No. 20cv23 (Doc. 52); *Sandmann v. CBS News*, No. 20cv24 (Doc. 58); *Sandmann v. ABC News, Inc.*, No. 20cv25 (Doc. 64); *Sandmann v. Gannett Co., Inc.*, No. 20cv26 (Doc. 65); *Sandmann v. Rolling Stone, LLC*, No. 20cv27 (Doc. 59)) be, and are hereby, **DENIED AS MOOT**;

(2)  Defendants' joint motions for summary judgment (*Sandmann v. New York Times*, No. 20cv23 (Doc. 53); *Sandmann v. CBS News*, No. 20cv24 (Doc. 59); *Sandmann v. ABC News, Inc.*, No. 20cv25 (Doc. 65); *Sandmann v. Gannett Co., Inc.*, No. 20cv26 (Doc. 66); *Sandmann v. Rolling Stone, LLC*, No. 20cv27 (Doc. 60)) be, and are hereby, **GRANTED**;

(3)  Defendants' motions to strike (*Sandmann v. New York Times*, No. 20cv23 (Doc. 64); *Sandmann v. CBS News*, No. 20cv24 (Doc. 72); *Sandmann v. ABC News, Inc.*, No. 20cv25 (Doc. 78); *Sandmann v. Gannett Co., Inc.*, No. 20cv26 (Doc. 78); *Sandmann v. Rolling Stone, LLC*, No. 20cv27 (Doc. 72)) be, and are hereby, **DENIED AS MOOT**; and

(4)  Separate judgments shall enter concurrently herewith in each of these cases.

This 26th day of July 2022.



**Signed By:**

**_William O. Bertelsman_**

**United States District Judge**